# STATE v. STANLEY LOYD.

212 N. W. 2d 671.

November 2, 1973—No. 43571.

*David P. Murrin,* Legal Rights Center, Inc., for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix, Vernon E. Bergstrom,* and *Michael McGlennen,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

KELLY, JUSTICE.

Defendant, Stanley Loyd, age 16, appeals from a conviction of aggravated robbery in Hennepin County District Court after he had been referred by the juvenile court for adult prosecution. The issues presented concern the admissibility in a criminal prosecution of a confession given by a juvenile before the juvenile court has waived its jurisdiction and referred him to be prosecuted as an adult. We affirm.

The events leading to defendant's arrest and ultimate convic-

tion involve the assault and robbery at gunpoint of two elderly widows on the evening of February 15, 1971. Four youths had gained entrance to the home of Mrs. Media Sheppard on the pretext of telephoning for help needed following a nearby automobile accident. The youths obtained a small amount of money after nearly an hour in the home, during which time both women were injured.

Officer Roger Brown of the Minneapolis Police Department was assigned to investigate this and other robberies which had occurred in the area. Officer Brown was the school liaison officer for certain south Minneapolis schools. His duties included the investigation of crimes which youths attending those schools were suspected of having committed. In this capacity he did not wear a police uniform, display a badge, or drive a police squad car.

Based on information from the two robbery victims, a warrant was secured for the arrest of defendant. Defendant was not at home when police stopped to take him into custody on the morning of February 17, 1971. Later that morning, Officer Brown was telephoned by defendant's parents, who said they had heard of the arrest warrant and would bring defendant to the courthouse for questioning.

Defendant was acquainted with Officer Brown through a number of conversations with him on previous occasions. He initially had been contacted by Officer Brown when the latter was investigating another case in which defendant was a suspect. The officer was aware that defendant was on juvenile parole and in other conversations with him had agreed to assist defendant in obtaining a job in order to aid him in discontinuing his associations with certain friends.

At approximately 11:30 a.m. on February 17, defendant, in the company of his parents, met with Officer Brown at the courthouse. Officer Brown informed defendant that he was investigating the robbery of the two widows and that defendant was a suspect in that robbery. He then gave him a standard Miranda

warning but did not inform defendant of the possibility that he might be prosecuted as an adult. Defendant and his parents acknowledged that they understood the rights as explained by the officer and defendant admitted involvement in the robbery. Later, after another Miranda warning and waiver of rights, defendant signed a statement to this effect.

There is some conflict concerning the timing of certain representations made by Officer Brown during this interview. Defendant contends that the officer told him before his statement that he would only be sent back to the state training school at Red Wing if he confessed. Officer Brown stated that discussion of defendant's possible punishment did not occur until after he had confessed to the robbery. The trial court accepted Officer Brown's version of the incident.

On April 12, 1971, the Hennepin County Juvenile Court waived its jurisdiction over defendant and referred him pursuant to Minn. St. 260.125 for prosecution as an adult. After denial of defendant's motion to suppress his confession at a Rasmussen hearing, defendant was tried and found guilty of aggravated robbery.

We are called upon to decide whether confessions made by a juvenile during custodial interrogation by police officers while the juvenile is under the exclusive jurisdiction of the juvenile court may be later admitted against him in a criminal proceeding. The present appeal does not raise the issue of parental presence at a juvenile's interrogation as a prerequisite to a waiver of his Miranda rights or of the admissibility of his spontaneous statements which are not a product of questioning.[1]

■ The issue is one of first impression to this court although we have recognized the need for special precautions in, and the vexatious nature of, custodial interrogation of juveniles concerning delinquent acts subsequently prosecuted as a crime. In State v. Ahlstrand, 288 Minn. 115, 179 N. W. 2d 170 (1970), we

---

[1] These related questions are present in our decision of State v. Hogan, 297 Minn. 430, 212 N. W. 2d 664 (1973).

were not required to decide the question presented here because the voluntariness of the confession was held immaterial in light of the juvenile's plea of guilty.

Juveniles as well as adults are entitled to be apprised of their constitutional rights according to the dictates of Miranda. In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. ed. 2d 527 (1967). In instances where a juvenile is later prosecuted as an adult, we must also be concerned that the juvenile is not misled by the nature of the juvenile system as to the consequences of his admission. The theory of the juvenile system is to treat the child in a rehabilitative atmosphere rather than in a criminal or punitive setting. The system is rooted in an informal and nonadversary setting to promote free disclosure and a trust relationship between the juvenile and representatives of the juvenile court. A confession of a juvenile must therefore be carefully scrutinized to assure that the juvenile court atmosphere did not encourage the child to confess when, if he had known that criminal prosecution as an adult could result, he might have exercised his right to remain silent.

The exclusive jurisdiction over juvenile offenders is provided in Minn. St. 260.111, subd. 1, which reads in part:

"Except as provided in section 260.125, the juvenile court has *original and exclusive* jurisdiction in proceedings concerning any child who is alleged to be delinquent * * *." (Italics supplied.)[2]

According to Minn. St. 260.211, subd. 1:

"* * * The disposition of the child *or any evidence* given by the child *in the juvenile court* shall not be admissible as evidence against him in any case or proceeding in any other court * * *." (Italics supplied.)

---

[2] Minn. St. 260.125 allows the juvenile court to waive its jurisdiction and refer a child who is at least 14 years of age for prosecution as an adult if the court finds that the child would not be amenable to treatment in the juvenile system or if public safety requires such referral.

We must also consider whether these statutory provisions prohibit the use of statements made while the juvenile is under the juvenile court's jurisdiction.

The string of decisions concerning prereferral confessions of juveniles had its germination in the decision of Harling v. United States, 111 App. D. C. 174, 295 F. 2d 161 (1961). That case established a per se exclusionary rule applied to statements made by a juvenile as the result of police interrogation before the juvenile court has waived its jurisdiction of the minor. The Harling court stated (111 App. D. C. 176, 295 F. 2d 163):

"* * * [T]he principles of 'fundamental fairness' govern in fashioning procedures and remedies to serve the best interests of the child. It would offend these principles to allow admissions made by the child in the non-criminal and non-punitive setting of juvenile proceedings to be used later for the purpose of securing his criminal conviction and punishment. Such a practice would be tantamount to a breach of faith with the child, since he cannot be charged with knowledge of either his privilege against self-incrimination, or the Juvenile Court's power to waive its jurisdiction and subject him to criminal penalties. Moreover, if admissions obtained in juvenile proceedings *before* waiver of jurisdiction may be introduced in an adult proceeding *after* waiver, the juvenile proceedings are made to serve as an adjunct to and part of the adult criminal process. This would destroy the Juvenile Court's *parens patriae* relation to the child and would violate the non-criminal philosophy which underlies the Juvenile Court Act.". .

See, also, Harrison v. United States, 123 App. D. C. 230, 359 F. 2d 214 (1965).

Relying on the Harling decision, the Arizona Supreme Court in State v. Maloney, 102 Ariz. 495, 433 P. 2d 625 (1967), adopted a modified rule. Arizona has an almost identical statutory provision to Minnesota in prohibiting the use of evidence given in juvenile court in another court. Compare 2 Ariz. Rev. Stat. Ann. § 8-228, subd. B (1956), with Minn. St. 260.211, subd. 1. Speak-

ing to what evidence comes within this statutory provision, the court stated (102 Ariz. 498, 433 P. 2d 628):

"As we see it, an inculpatory statement obtained by the police while the child is within the jurisdiction of the juvenile court is part of the evidence gathering function of that court. The fact that such evidence was never offered to the juvenile court in a hearing to adjudicate whether the child is delinquent does not alter the fact that such an inculpatory statement is evidence."

The court concluded (102 Ariz. 499, 433 P. 2d 629):

"* * * We hold as a matter of 'fundamental fairness', and because § 8-228, subsec. B, 2 A.R.S., prohibits the use of such evidence, that inculpatory statements made by a child while under the jurisdiction of the juvenile court and before that court waives its jurisdiction, cannot later be used against the child in a subsequent criminal proceeding *unless he and his parents are advised before questioning not only of the child's right to counsel and privilege against self-incrimination, but also of the possibility that he may be remanded to be tried as an adult.*" (Italics supplied.)[3]

Thus, the Arizona court, although holding that police interrogation was part of juvenile proceedings, did not apply a strict exclusionary rule as did Harling. The Maloney decision requires that the juvenile, in addition to being advised of his Miranda rights, must also be specifically advised that adult prosecution could result. Accord, State v. Cano, 103 Ariz. 37, 436 P. 2d 586 (1968).

The Supreme Court of Oregon also rejected the strict exclusionary rule of Harling without requiring an express warning that criminal prosecution was possible. In State v. Gullings, 244 Ore. 173, 416 P. 2d 311 (1966), it was recognized that the parens patriae theory of juvenile treatment is based upon a close rela-

---

[3] State v. Hardy, 107 Ariz. 583, 491 P. 2d 17 (1971) overruled Maloney to the extent that it required parental presence and consent for the waiver of constitutional rights by a juvenile.

tionship between the child and representatives of the court, the essence of that relationship being the establishment of an informal, nonadversary setting which is the antithesis of adult criminal procedure. In light of these principles, it would be inconsistent to allow admissions of juveniles made in such a noncriminal, nonpunitive atmosphere to later be used against the child in criminal prosecution. However, the court held (244 Ore. 178, 416 P. 2d 313):

"Presuming that federal constitutional Fifth and Sixth Amendment rights are granted, we believe that an absolute prohibition is not required so long as it is made clear to the juvenile that criminal responsibility can result and that the questioning authorities are not operating as his friends but as his adversaries. * * *

"* * * No 'principles of fundamental fairness' are offended when the information is secured in a setting that is so patently adversarial as to be understood by the child. The *parens patriae* relationship does not exist between police and child but between court and child. Police are in the business of solving transgressions against the welfare of society and the apprehension of those who are responsible therefor. They are not engaged in the rehabilitation of the child and the treatment of his emotional and family problems where the free exchange of information and a close relationship is so important. The use of information secured by police will not, in our opinion, tend to make more difficult the establishment of a close relationship between juvenile workers and the child."

Accord, State v. Prater, 77 Wash. 2d 526, 463 P. 2d 640 (1970); State v. Sinderson, 455 S. W. 2d 486 (Mo. 1970) (similar factual setting to present case).[4] See, also, State v. Arbeiter, 449 S. W. 2d

---

[4] The trial court in an excellent memorandum commented on State v. Sinderson, 455 S. W. 2d 486 (Mo. 1970) as follows: "The following case * * * the undersigned believes to state the proper view. In that case a fourteen-year-old boy together with his mother and uncle voluntarily went to the police. After being given the Miranda warnings and stating,

627 (Mo. 1970) (involving admissions made to juvenile officer).

Thus, the Gullings case differs from the Maloney decision in that the juvenile, if he is advised of his constitutional rights, does not have to be specifically informed that adult prosecution could result. It is sufficient if the adversary nature of the interrogation is apparent to the juvenile, as it often is when the police are conducting the questioning. The Gullings decision also differs from Maloney in that the court held that the statute prohibiting use of evidence given in juvenile proceedings did not apply to information secured through the investigatory activities of the police, who are not in a parens patriae relationship with the child. The statutory prohibition against evidence given in juvenile court *cases* did not extend to police investigations. Although juvenile court jurisdiction attached when the child was taken into custody, the important factor was whether the child legitimately believed that a protective, nonadversary relationship existed at the police questioning.

Another jurisdiction considering this question has rejected Harling entirely and requires only a proper Miranda warning and valid waiver to make a juvenile confession admissible. See, Mitchell v. State, 464 S. W. 2d 307 (Tenn. Cr. App. 1971); O'Neil v. State, 455 S. W. 2d 597 (Tenn. Cr. App. 1970). See, also, People v. Hester, 39 Ill. 2d 489, 237 N. E. 2d 466 (1968).

We agree with the rule expressed by the Oregon court in State

as did his mother, that he saw no need for a lawyer, the boy in response to interrogation by a police captain and a juvenile officer attached to the Juvenile Court gave a detailed statement confessing to robbery and murder. The Missouri Supreme Court held that use of the confession in a criminal prosecution against the boy did not violate the Juvenile Code or any of his constitutional rights. Citing *In re Gault,* 387 U. S. 1 (1967) the court further held that a child can waive the appointment of counsel, 387 U. S. at 42, and that a child's confession may be voluntary although he was not represented by counsel when he confessed. 387 U. S. at 55. The *Sinderson* court recognized that a child's prewaiver confession to a policeman and a juvenile court officer were [sic] not evidence given in a juvenile court case. 455 S. W. 2d at 492. With the decision in *Sinderson* the undersigned agrees."

v. Gullings, 244 Ore. 173, 416 P. 2d 311 (1966). A confession by a juvenile is admissible if he has been apprised of his constitutional rights and voluntarily and intelligently waives those rights in making a statement. However, we recognize that the nature of the juvenile system may work to encourage a confession by a juvenile which might otherwise be withheld. While all of the facts and circumstances should be examined in determining whether a juvenile has intelligently waived those rights, it is important that the juvenile is questioned in an adversary setting and not in the confidential atmosphere of the juvenile court process; otherwise he may not realize that criminal responsibility might result. Awareness of potential criminal responsibility may often be imputed to a juvenile when the police are conducting the interrogation. Of course, the safest method the interrogating authority can pursue is to specifically advise a juvenile that criminal prosecution as an adult could result whenever such prosecution is possible.

The defendant in this case had an extensive juvenile delinquency record, was on parole from the state school at Red Wing, and was under the supervision of a probation officer. Although Officer Brown did not specifically inform defendant of possible adult prosecution, he was not attached to the juvenile court and defendant knew he was a policeman. The trial court in its memorandum commented:

"Nothing in the evidence suggests any conduct on Officer Brown's part that in any way might mislead the defendant or his parents into believing that he was in any way directly connected with the Juvenile Court or that his position was in any way other than investigative and potentially adversary. If there were no testimony beyond that of the defendant, no other conclusion could reasonably be reached. He said that Brown told him he was investigating certain robberies, and he acknowledged that Brown advised him of his rights—the so-called Miranda warnings. Upon the facts here no one, let alone a boy with the defendant's previous acquaintance with the police and the Juvenile

Court, could possibly have labored under misapprehension about either Officer Brown's status or his relationship to the defendant."

After considering all the evidence, we conclude that the record amply supports the trial court's finding that the inculpatory statements were not elicited in a context in which the defendant could reasonably believe that a protective and confidential relationship existed between him and the police.

We also hold that Minn. St. 260.211, subd. 1, which prohibits the use of evidence given in juvenile court in other court proceedings does not prevent the admission in criminal proceedings of a juvenile's confession to the police. The police are not a part of the juvenile court acting in a parens patriae relationship with the child. An extension of the statute to include evidence gathered by police investigation of juvenile conduct would be unwarranted. The statutory prohibition is of evidence given in juvenile *court*—which does not include police investigatory activities involving juveniles.

■ It is also contended that the waiver of defendant's right to remain silent was not voluntarily made because of his mental subnormality, the alleged representations by Officer Brown, and the claimed trust relationship with him.

The defendant testified in his own behalf at the pretrial hearing, giving the trial court an opportunity to observe and gauge his mental abilities. That court made this observation:

"* * * After having the opportunity to listen to and observe the defendant while testifying, the undersigned concludes that whatever his limitations, he adequately understood the seriousness of his position, his relationship to Officer Brown, and the possibility that unpleasant consequences might follow. Thus, while the defendant's intellectual limitations are a factor which must be given consideration, they are not enough in these circumstances to taint the confession."

The trial court, viewing the totality of the circumstances, found:

452

"The defendant at all times was in his parents' company. The Miranda warnings were properly given. Both the defendant and his parents had adequate knowledge of his Fifth and Sixth Amendment rights when the defendant waived those rights and confessed. No threats were made and no inducements offered to extract the confession. Nor was any trickery or deception practiced. The interrogation was neither protracted nor intense. The defendant was not held incommunicado and was promptly brought before the Juvenile Court Judge. The totality of circumstances here leads the undersigned to the conclusion that his confessions were voluntary and, therefore, constitutionally admissible at the trial."

We agree that defendant voluntarily waived his constitutional rights.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.