**STATE of Minnesota, Respondent,**

**v.**

**David Allen ORSCANIN, Appellant.**

**Nos. 47431, 49368.**

Supreme Court of Minnesota.

Aug. 17, 1979.

Certiorari Denied Nov. 26, 1979.
See 100 S.Ct. 464.

C. Paul Jones, Public Defender, and Ronald L. Haskvitz, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and David L. Valentini, Sp. Asst. Atty. Gen., St. Paul, James R. Korman, County Atty., Faribault, for respondent.

Heard before ROGOSHESKE, WAHL, and MAXWELL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Defendant, David Orscanin, appeals from an order of the district court denying his request to have his judgment of conviction and sentence vacated and set aside. The district court decision was made following a postconviction hearing held pursuant to our remand of a prior appeal. The chief issue raised is whether defendant's confession was voluntary and therefore admissible. Upon a careful reading of the record, we hold that defendant's confession was voluntary. We therefore affirm.

On September 28, 1976, defendant Orscanin was sentenced to a 0- to 5-year prison term following conviction on charges of burglary and theft, arising out of a breaking and entry at the Northfield Golf Club in Northfield, Minnesota. The primary evidence against Orscanin at his trial was his confession to Sergeant Rudolph Scholl of the Northfield Police Department. The confession was given at the Red Wing Training School on July 8, 1976.

At the omnibus hearing Orscanin attempted to testify that promises of leniency made by his parole agent induced him to confess to Scholl. The trial court, however, ruled such testimony inadmissible and concluded that the confession itself was admissible. The confession, in its entirety, was presented to the jury. Orscanin appealed to this court, arguing in part that the confession was induced by promises of leniency. We remanded for a postconviction hearing to determine whether Orscanin was induced to confess because of promises of leniency, stating that Orscanin should be granted a new trial if his allegations were true. *State v. Orscanin*, 266 N.W.2d 880 (Minn.1978). On June 30, 1978, a postconviction hearing was conducted. Both Orscanin and parole agent Jerry Tonder testified. On September 13, 1978, the postconviction court denied the requested relief, concluding that Orscanin's confession was voluntary.

Defendant claims, on appeal, that he was denied due process, because his confession was not freely and voluntarily given but

was induced by (1) promises of leniency made by parole agent Tonder, (2) misstatements by Tonder concerning the nature of the charges against him, (3) interrogation in a juvenile setting which led defendant to believe that he would be treated as a juvenile, and (4) his 6-day confinement prior to the confession.

■ An inculpatory statement is only admissible if it was voluntarily given. See, *State v. Biron,* 266 Minn. 272, 123 N.W.2d 392 (1963). The totality of relevant circumstances should be considered when determining voluntariness, including such factors as parental presence, age, maturity, intelligence, education, experience, and the ability to comprehend. See, *State v. Hogan,* 297 Minn. 430, 212 N.W.2d 664 (1973). A confession must not be extracted by any sort of threat or violence or obtained by direct or implied promises. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Whether defendant's confession was voluntary turns on a determination of defendant's state of mind at the time of the confession. Was defendant subjectively induced to confess or was his confession the product of a free-will decision? We must review the facts surrounding the confession, determine how defendant reacted to these external facts, and decide the legal significance of how he reacted. See, *Culombe v. Connecticut,* 367 U.S. 568, 603, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1058 (1961). At the time of the confession defendant was 18 years 3 months old, had formal education to the 10th grade, and had never been in adult court. Defendant was committed to the Red Wing Training School in March 1976 for possession of a handgun. Jerry Tonder was assigned as his parole supervisor and counselor. In May 1976, defendant was released on juvenile parole. Defendant violated his parole agreement by leaving the state and traveling to Billings, Montana. After his apprehension in Billings, he was returned to Red Wing and placed in a lockup, which was described as a room approximately 6 feet by 9 or 10 feet in size, enclosed by a security screen. The room contained only a bed. Defendant was required to eat in the room and was allowed out only to take a shower and use the toilet. He was not allowed radio, television, or any form of recreation. He was kept in this room for 6 days, during which he did not see a lawyer, his parents, or any visitors other than Tonder and the police officers.

On the fourth day of his confinement, defendant was visited by his parole agent, Jerry Tonder. Tonder told him that he might be visited by Northfield police officers. According to defendant, Tonder talked about the revocation of his parole and led him to believe that the entire matter would be handled at the Red Wing Training School as a juvenile matter:

"* * * [F]rom what I gathered from what he was talking to me * * * juvenile was going to handle the whole situation. So by that I didn't want to have to be charged for all these other crimes that I had nothing to do with. I was in turn waiting and I wanted to get these things going. I was scared all the time about all that stuff that was coming down so I admitted [to the police officers] what I did do, what happened in Northfield, Minnesota."

According to defendant, Tonder told him he would try to arrange to have defendant transferred to a halfway house if his parole was revoked and that it would "look better if I cleared things up." Defendant claims that he relied upon Tonder's representations that if he cooperated he would not go to prison but would go through the juvenile process.

Tonder testified that he told defendant at the July 6 meeting that after the parole revocation hearing defendant might be removed from the juvenile setting and tried as an adult on the charges listed on the parole revocation notice. In fact, Tonder admitted that he had talked to the Northfield police before his conversation with de-

fendant and was given the impression that "there was a good chance" that defendant was going to be charged with the Northfield burglary. Tonder further testified, with regard to defendant's claim that Tonder would help him get into a halfway house treatment program, that the discussion about the halfway house had nothing to do with the parole revocation hearing. Instead, the discussion centered around the possibility that defendant would be removed to Hennepin County to stand trial on other charges. If that happened, Tonder told defendant that he would try to help defendant get into one of the Hennepin County halfway house programs. With regard to defendant's claim that he was promised leniency if he confessed, Tonder admitted he told defendant:

"* * * [F]rom my experience when a person is honest with the court and if they do plead, a lot of times the court hearings are less detailed and don't last as long. Likewise, if you get appeals and stuff, sometimes they can last up to a year and longer.

*    *    *    *    *    *

"* * * [W]hen a person is honest and when he deals with things appropriately a lot of times people respect their honesty and, you know, will not deal out consequences as strongly and, you know, things will work out better for that person."

The confession occurred on July 8, 1976, the sixth day of confinement, while defendant was being questioned by Officers Scholl and Olson. The interrogation was prefaced by a *Miranda* warning. Defendant was further told that he did not have to talk with the officers. At no time did he inform the officers that any promises or inducements to provide a statement had been made by any person. At the conclusion of the interrogation, which resulted in a taped confession that was used against him at trial, defendant was asked if any promises or threats had been made to obtain his statement. Defendant responded, "No, no."

Defendant also was asked if the statement was given of his own free will, and he responded, "Yeah."

After defendant confessed to the officers, he was placed in the regular population at the Red Wing facility. Shortly thereafter, defendant's juvenile parole was revoked and he was put into the Harvard Program at Red Wing. One week after the revocation, he was served with a warrant for the Northfield Golf Club burglary and taken to the Rice County Jail.

▇▇▇ After carefully reviewing the transcript of the postconviction hearing, we hold that the postconviction court was justified in finding that defendant's confession was voluntary and that its admission at trial did not deny defendant due process. The evidence, summarized above, does not support defendant's contention that he was promised leniency in exchange for a confession. Defendant's testimony as to why he believed he was promised leniency is replete with qualifying phrases, such as "from what I gathered" or "as what I took it." While we are concerned with whether defendant was subjectively induced to confess, and therefore his perceptions of what transpired at the meeting with Tonder are important, these statements from the postconviction hearing are simply unconvincing. For a defendant to persuade a court that his confession was induced by a promise of leniency, he must make a stronger showing of specific inducements than defendant has made here. It strains credibility to assert that defendant confessed to police because of the common-sense advice given by his parole officer that a defendant might get a shorter sentence if he pleads guilty, especially where the relationship of defendant and Tonder was not very close. As this court stated in *State v. Biron,* 266 Minn. 272, 282, 123 N.W.2d 392, 399 (1963):

"It should be realistically conceded that the trustworthiness of a confession should not in every instance be discounted because investigative officers [or here, Mr. Tonder] in their interviews might have

made *discursive or imprecise* statements to the defendant." (Italics supplied.)

A fair reading of the postconviction transcript does not show that the charges against defendant were misstated. As mentioned above, Tonder advised defendant of nine charges that were a part of the parole revocation hearing and informed him that he could be tried as an adult on any of those charges.

As for defendant's claim that the juvenile atmosphere led defendant to believe that he would be treated as a juvenile, the record indicates that Tonder specifically mentioned to him that he could be tried in adult court. Moreover, the police officers gave defendant a full *Miranda* warning before questioning, which defendant acknowledged he understood. It is inconceivable that defendant believed that a protective, nonadversarial relationship existed between himself and the officers at the time of the confession. See, *State v. Loyd,* 297 Minn. 442, 212 N.W.2d 671 (1973).

■ Defendant's contention that his confession was involuntary due to his confinement for 6 days in a 6-foot by 9- or 10-foot room with only one visit by parole agent Tonder before he gave his confession to the police is more troubling. It is difficult to calculate the impact of a lengthy confinement on the will of a prisoner. A 6-day confinement in close quarters could conceivably induce a confession merely in exchange for relief from such conditions. If defendant were not legally detained for a parole violation, a confinement more than 36 hours without appearance before a judge generally would be illegal. See, Rule 4.02, subd. 5(1), Rules of Criminal Procedure. Given the fact that defendant does not claim that he was promised relief from his confinement conditions in exchange for a confession and the fact that defendant was legally detained for a parole violation, we agree with the postconviction court that defendant's confinement did not induce defendant to confess. Defendant surely must have

realized that his confession of involvement in the Northfield burglary would not free him from some sort of confinement. The only authority defendant offers in support of his argument, *State v. Weekes,* 312 Minn. 1, 250 N.W.2d 590 (1977), is distinguishable from the instant case. There the defendant was taken into custody and confined for "investigation" for more than 34 hours, but was never arrested. In addition, the defendant in *Weekes* was repeatedly questioned until he finally confessed.

■ Defendant's final contention, that the trial court's instructions to the jury on the issue of the voluntariness of the confession were prejudicial, is without merit. In *State v. Orscanin,* 266 N.W.2d 880 (Minn. 1978), we stated that it was error for the trial court to instruct the jury on the issue of the voluntariness of defendant's confession. Voluntariness is strictly a matter for the trial court at the omnibus hearing. Given our disposition of the voluntariness issue, the trial court's error in submitting the issue of voluntariness to the jury cannot have been prejudicial. The trial court simply gave the defendant a second chance with the voluntariness argument before the jury, which the jury did not credit.

Affirmed.

WAHL, Justice (dissenting).

At the time of the confession in this case, appellant was 18 years 3 months old, had formal education to the 10th grade, and had never been in adult court. After his apprehension for parole violation, he was placed in a lockup in Dayton Cottage, which was approximately 6 feet by 9 or 10 feet in size. The room contained only a bed. He was required to eat in the room and was allowed out only to take a shower and to use the toilet. He was not allowed radio, television, nor any form of recreation. He was kept in this room for 6 days. During those 6 days he did not see a lawyer, his parents, nor any visitors other than a single visit from his parole officer on the fourth day and from

the police officers on the sixth day. After he confessed to the police officers, he was allowed into the regular population of the cottage. On these facts and circumstances alone, I would find the confession involuntary.

YETKA, Justice (dissenting).

I join in the dissent of Justice Wahl.