**In the Matter of the WELFARE OF G. (NMN) M., a/k/a W.M.**

**No. C9–95–812.**

Court of Appeals of Minnesota.

Jan. 9, 1996.

Review Granted March 13, 1996.

John M. Stuart, State Public Defender, Ann McCaughan, Assistant State Public Defender, Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, Todd Webb, Clay County Attorney, Scott G. Collins, Assistant County Attorney, Moorhead, for Respondent.

Considered and decided by RANDALL, P.J., and SHORT and FORSBERG*, JJ.

## OPINION

FORSBERG, Judge.

Appellant G.M. was arrested and charged as an extended jurisdiction juvenile with controlled substance crime in the first and second degrees. The trial court denied appellant's motion to suppress evidence seized from his person and to suppress incriminating statements made during custodial interrogation. We affirm.

## FACTS

On January 25, 1995, Gary Pederson, a narcotics agent with the Minnesota Bureau of Criminal Apprehension (BCA), was in Moorhead, Minnesota, investigating possible activities involving illegal drugs. He was working in cooperation with the Clay County Sheriff's Department, the Moorhead Police Department, and a confidential informant. For a period of two to three months prior to that day, the informant had provided the Moorhead Police Department on several occasions with information that led to the arrest of persons possessing illegal drugs. At the time, the prosecutions of those arrests were still pending.

On that day, the informant and an unknown companion were standing in a parking lot located at 1929 18th Avenue South in Moorhead. The informant was wired with a radio transmitter. Agent Pederson was parked across the street, where he was observing the informant and his companion and was picking up the radio transmissions being sent by the informant.

The informant's companion was standing near three males and a brown car. He learned that some cocaine was either in the car or in the personal possession of the three males. The companion passed this information on to the informant, who radioed this information along with a description of the car, the license plate number, and the number and gender of the car's occupants to Agent Pederson. Agent Pederson observed the car exit the parking lot and transmitted all of the relevant information to the Clay County Sheriff's Department, which in turn sent this information to the Moorhead Police Department.

Moorhead Police Officers Carlson and Jaeche received the information and approached the intersection of 20th Street and 18th Avenue South. They noticed a car matching the description and license plates pull into a parking lot at 1929 18th Avenue South. The officers then drove into the parking lot, saw the car, and observed three males walking away from the car.

Officer Jaeche told the three males to stop and come forward, which they did. Appellant was among the three males. Officer Carlson asked the three suspects whether they were carrying weapons. Appellant replied no, but that he had a pouch in his possession that he found on the street and that he did not know what was inside the pouch. Officer Carlson could see a portion of the purple pouch sticking out from appellant's sweatshirt pocket. He took the pouch out of appellant's pocket, handed it to Officer Jaeche, and proceeded to conduct a patdown search of the three suspects. Officer Carlson testified that he took the pouch and conducted the patdown search to find and remove possible weapons from the three suspects. The officers subsequently looked inside the pouch and found small bags containing a white powdery substance. The officers then arrested all three males, including 17–year–

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

old appellant and his 20–year–old brother, Edward.

At the Moorhead Police Department, Detective Thorsen first interviewed Edward, who made several statements that incriminated appellant. After this interview, appellant and his brother spoke alone for about 12 minutes. Because appellant's father was deceased and his mother was living in Texas, Detective Thorsen asked Edward to act in a parental capacity for appellant. After reading appellant his *Miranda* rights, Detective Thorsen interrogated appellant in his brother's presence. Appellant indicated that he understood his rights and waived them. During the interrogation, appellant admitted that he was knowingly in possession of the cocaine.

The contents of the pouch were examined by the BCA and found to be 15.1 grams of cocaine. On January 26, 1995, appellant was charged by petition as an extended jurisdiction juvenile with one count of controlled substance crime in the first degree, in violation of Minn.Stat. § 152.021, subd. 1(1) (1994) (sale of ten grams or more of a controlled substance), and one count of controlled substance crime in the second degree, in violation of Minn.Stat. § 152.022, subd. 2(1) (1994) (possession of six grams or more of a controlled substance).

Appellant moved to suppress the cocaine and his incriminating statements made during custodial interrogation. On February 21, 1995, after a suppression hearing, the trial court denied appellant's motion. The trial court determined that the police lawfully detained appellant and had probable cause to believe the pouch contained contraband. The trial court also determined that appellant voluntarily made the incriminating statements.

On March 14, 1995, the state agreed to dismiss count one of the petition and appellant stipulated to facts under count two. Appellant waived his right to a jury trial, and the trial court found appellant guilty of one count of controlled substance crime in the second degree.

## ISSUES

1. Did the police have reasonable suspicion of criminal activity to stop appellant?

2. Did the police have probable cause to seize and search the purple pouch in appellant's possession?

3. Did the state prove by a fair preponderance of the evidence that appellant's incriminating statements were made voluntarily?

## ANALYSIS

### 1. *The Stop*

Appellant argues that he was unlawfully detained because the police officers had no reasonable basis to suspect that he was engaged in criminal activity. We disagree.

The United States Supreme Court has held that a police officer may stop and frisk a person for purposes of investigating possible criminal behavior on less than the traditional probable cause for arrest if he is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *State v. Cavegn*, 294 N.W.2d 717, 721 (Minn.), *cert. denied*, 449 U.S. 1017, 101 S.Ct. 580, 66 L.Ed.2d 477 (1980).

An informant's tip may be adequate to support an investigative stop if it has sufficient indicia of reliability. *Cavegn*, 294 N.W.2d at 721. Further, the grounds for making the stop can be based on the collective knowledge of all investigating officers. *Id.; State v. Radil*, 288 Minn. 279, 283, 179 N.W.2d 602, 605 (1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971).

Here, the police received a recent report from a reliable informant. Narcotics had been seized in the past based on information provided by the informant. The informant described with reasonable accuracy the number of people involved, the car they were using, and its location. He also stated that the three individuals were in possession of cocaine. The two police officers dispatched to find the car observed it driving into a parking lot. When the officers pulled into

the same parking lot, they observed the three individuals walking away from the car.

We conclude that based on the tip from the informant and the narcotics agent's own observations of the vehicle the police had a reasonable and articulable suspicion of criminal activity to make a lawful investigative stop of appellant.

### 2. The Search

■ Appellant argues that even if the police lawfully detained him, the police officers exceeded the scope of a protective search for weapons. We disagree.

■ As appellant points out, a *Terry* frisk is a protective search "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882. However, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant under the "plain view" doctrine. *Minnesota v. Dickerson*, 508 U.S. 366, ——–——, 113 S.Ct. 2130, 2136–37, 124 L.Ed.2d 334 (1993); *State v. Lembke*, 509 N.W.2d 182, 184 (Minn.App.1992). An object's "incriminating character is immediately apparent" if the police have probable cause to believe that the object in plain view is contraband without conducting further search of the object. *Dickerson*, 508 U.S. at ——, 113 S.Ct. at 2137; *Lembke*, 509 N.W.2d at 184.

The Supreme Court has upheld the plain view seizure in the context of a *Terry* stop. *Dickerson*, 508 U.S. at ——, 113 S.Ct. at 2136. Here, the police officers lawfully de-

tained appellant for an investigative *Terry* stop and the purple pouch was in Officer Carlson's plain view at the time of the stop. Thus, the dispositive issue is whether the police had probable cause to believe the pouch contained contraband at the time it was seized.

■ A determination of probable cause is based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Here, the trial court determined the police had probable cause to believe the purple pouch contained an illegal substance based on three findings. First, the trial court found that "the police obtained information from a highly reliable informant that the three suspects were in possession of cocaine." Second, "the informant gave accurate and detailed descriptions of the suspects and their automobile, and * * * the apprehension occurred a short time thereafter." Finally, the trial court found that appellant's suspicious behavior with respect to the purple pouch gave the police probable cause. We agree with the trial court that under these facts and circumstances the police had probable cause to believe the pouch contained an illegal substance at the time it was taken from appellant.

Appellant cites *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), to support his contention that the search of the contents of the purple pouch was illegal.[1] In *Dickerson* the defendant sought to suppress the seizure of crack cocaine taken from his person during a *Terry* search and patdown. *Id.*, at ——, 113 S.Ct. at 2134. The police officer observed the defendant leaving a building known for cocaine traffic. *Id.*, at ——, 113 S.Ct. at 2133.

---

1. Appellant actually cites to the Minnesota Supreme Court case, *State v. Dickerson*, 481 N.W.2d 840 (Minn.1992). In *State v. Dickerson*, the supreme court held that the plain view doctrine was not applicable by analogy to cases where an officer discovers contraband through the sense of touch during an otherwise lawful search. *Id.* at 845.

In *Minnesota v. Dickerson*, the United States Supreme Court affirmed *State v. Dickerson* on modified grounds. *Dickerson*, 508 U.S. at ——–——, 113 S.Ct. at 2137–39. The Supreme Court held that

[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.*, at ——, 113 S.Ct. at 2137.

Based on the defendant's seemingly evasive conduct when approached by the police, the police decided to investigate further and ordered the defendant to submit to a patdown search. *Id.* While conducting the patdown, the officer felt a small lump in the defendant's jacket pocket, which he did not believe to be a weapon. *Id.* After squeezing, sliding, and manipulating the contents of the pocket, the officer reached into the pocket and retrieved a small bag containing cocaine. *Id.,* at ——, 113 S.Ct. at 2133–34.

In *Dickerson,* the United States Supreme Court held that during a *Terry* stop and patdown search, regardless of whether the officer detects the contraband by sight (plain view) or by touch (plain feel), the Fourth Amendment requires that the officer have probable cause to believe that the item is contraband before seizing it. *Id.,* at ——, 113 S.Ct. at 2137. Specifically, the Supreme Court held that under the facts and circumstances in *Dickerson,* the police officer did not have probable cause to believe that the object was cocaine before he seized it. *Id.,* at ——, 113 S.Ct. at 2138. The officer's continued exploration of defendant's pocket after having concluded that it did not contain a weapon was unrelated to the sole justification of the search under *Terry.* *Id.,* at —— – ——, 113 S.Ct. at 2138–39.

This case is distinguishable from *Dickerson.* First, in *Dickerson,* the defendant was merely walking away from a house known for cocaine traffic. Here, the police had a fresh tip from a reliable informant that appellant was in possession of cocaine. Second, in *Dickerson,* the police did not ask the defendant about the contents in defendant's pocket before the item was seized. Here, the police did ask about the pouch and appellant suspiciously replied that he did not know what was in the pouch. Finally, in *Dickerson,* it was clear that the police officer did not have probable cause to believe the lump in defendant's pocket was contraband until he manipulated it with his fingers. Here, based on the totality of the circumstances, the police did have probable cause to believe the pouch contained contraband before it was seized.

■■■ Finally, appellant argues that the search of the pouch was unlawful because

Officer Carlson performed a *Terry* frisk for the unlawful purpose of looking for drugs and not weapons. *See Dickerson,* 508 U.S. at ——, 113 S.Ct. at 2136 ("If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed."). An officer's subjective motive does not invalidate an otherwise lawful search. *Horton v. California,* 496 U.S. 128, 137–42, 110 S.Ct. 2301, 2308–10, 110 L.Ed.2d 112 (1990) (holding that proper discoveries need not be "inadvertent"); *see also Lembke,* 509 N.W.2d at 184 (officer's subjective reasons for seizing object do not necessarily invalidate search where officer has probable cause). Here, the seizure and search of the purple bag was valid under the plain view doctrine because Officer Carlson had probable cause to believe the pouch contained cocaine before he seized it. Although Officer Carlson may have been looking for or hoping to find cocaine during his search of appellant, his motive does not invalidate the search of the purple pouch.

We conclude that the trial court did not err in holding that the cocaine was admissible because the purple pouch was properly seized under the plain view exception to the warrant requirement.

### 3. Coercion

■■■ Appellant argues that he did not voluntarily waive his *Miranda* rights during custodial investigation because of familial coercion. In particular, he contends that the police used appellant's older brother to coerce appellant to make incriminating statements. We disagree.

■■■■ The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits admission of confessions unless they are voluntary. *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963); *State v. Douglas,* 501 N.W.2d 694, 697 (Minn.App.1993), *review denied* (Minn. Aug. 16, 1993). Whether a confession by a juvenile is voluntary is a question of fact dependent on the totality of the circumstances, including "the child's age, maturity, intelligence, education, and the

presence or absence of parents." *State v. Ouk,* 516 N.W.2d 180, 184–85 (Minn.1994).

▮ Statements are made involuntarily if the police actions, taken together with other circumstances surrounding the interrogation, "were so coercive, so manipulative, so overpowering" that the admissions were not a product of the suspect's own will. *State v. Pilcher,* 472 N.W.2d 327, 333 (Minn.1991). Further, familial coercion may be a consideration in determining whether a confession was voluntary; however, it is only one consideration in this court's inquiry under the totality of the circumstances analysis. *Douglas,* 501 N.W.2d at 697.

▮ The state has the burden of showing the voluntary nature of a confession by a fair preponderance of the evidence. *State v. Hoffman,* 328 N.W.2d 709, 714 (Minn.1982). The finding of the trial court as to the admissibility of the confession will not be reversed unless clearly erroneous, but this court can make an independent determination of the voluntariness of the confession based on the record. *Id.*

The record shows that the state met its burden of showing that appellant's confession was voluntary. Appellant was of a suitable age, intelligence, and maturity to understand and to validly waive his *Miranda* rights. At the time of the custodial interrogation, he was 17 years old and was living on his own. Before questioning appellant, Detective Thorsen testified that he read the *Miranda* rights to appellant, that appellant indicated he understood them, and that he waived his rights. There is nothing in the record to indicate that appellant did not understand his rights.

Appellant's parents were not present at the interrogation because his father was deceased and his mother was living in Texas. Detective Thorsen asked appellant's 20–year–old brother Edward to stand in loco parentis. Edward was present during Detective Thorsen's interrogation of appellant, which was short in duration.

Appellant did not deny that his statements were made voluntarily, nor did he present any evidence to rebut the state's showing that his statements were made voluntarily.

Neither appellant nor his brother testified as to the voluntariness of the confession. Although Edward had already made statements incriminating appellant, and he and appellant spoke for 12 minutes alone before appellant's interrogation, there is nothing in the record to indicate that either Detective Thorsen or Edward coerced appellant to make any incriminating statements.

Appellant also cites *State v. Thornblad,* 513 N.W.2d 260 (Minn.App.1994), to support his contention that the trial court made an inadequate investigation to determine whether appellant's confession was voluntary.

In *Thornblad,* the trial court had determined that the defendant was not competent to represent himself. *Id.* at 262. The appellate court, however, held that where a defendant was found to be competent to stand trial, he could not be denied his constitutional right to self-representation on incompetency grounds. *Id.* at 264. The state argued that the trial court did not deny defendant's motion to represent himself on competency grounds but instead found that the defendant did not knowingly and intelligently waive his right to counsel. *Id.* at 263. The court in *Thornblad* rejected this argument, stating that the trial court's three questions directed at defendant regarding his education and legal training were insufficient to show that the defendant did not know what he was doing or understand the consequences of his decision. *Id.* at 263–64.

This case is distinguishable from *Thornblad.* In *Thornblad,* the state asked the appellate court to review a determination of the knowing and intelligent waiver of counsel, which the trial court had never made. The appellate court determined that the record was in fact insufficient to support the state's argument. *Id.* Here, the trial court did make a determination on the voluntariness of appellant's statements. The record shows that appellant was aware of his rights and voluntarily waived them.

▮ Appellant also argues his waiver of rights was not valid because the interrogating officer failed to advise him that any statements he made could be potentially used

against him in an adult criminal prosecution. We disagree.

The Minnesota Supreme Court has encouraged law enforcement officers to advise juveniles about the possibility of adult criminal prosecution, *Ouk*, 516 N.W.2d at 185, particularly in situations in which the juvenile is questioned in the confidential atmosphere of the juvenile court process, where the juvenile may not otherwise realize that criminal responsibility could result. *State v. Loyd*, 297 Minn. 442, 450, 212 N.W.2d 671, 677 (1973). The supreme court, however, has refused to adopt a per se exclusionary rule that would bar the use of a juvenile's confession in a criminal prosecution for a felony when the juvenile is not warned about the possibility of adult prosecution. *Ouk*, 516 N.W.2d at 185.

Although the record does not indicate that appellant was told of possible adult criminal prosecution, awareness of potential responsibility may be imputed to him. *See id.; Loyd*, 297 Minn. at 449–50, 212 N.W.2d at 677 (awareness of potential criminal responsibility may often be imputed to juvenile when police conducted the interrogation). Appellant was arrested after the police found cocaine in his possession. He was taken to the police department, where he was interrogated by a police officer who recorded their conversation. Under these circumstances, we may impute to appellant an awareness of the possibility of adult criminal prosecution. Thus, we conclude that, under the totality of the circumstances, appellant voluntarily made incriminating statements.

## DECISION

The trial court did not err in holding that the cocaine and appellant's statements made during custodial interrogation were admissible.

**Affirmed.**

RANDALL, Judge (Dissenting).

I respectfully dissent, and would remand for a new trial without appellant's confession.

I conclude it was error, as a matter of law, to receive appellant's confession into evidence. I find no cure other than a new trial. Appellant's confession so incriminated him,

and so tied him to the other evidence which, standing by itself, was purely circumstantial and somewhat thin, that no other conclusion can be drawn but that with the illegal confession in evidence, the error was prejudicial and noncurable.

When appellant was arrested and brought to the Moorhead Police Department in custody for interrogation, it is not in dispute that the officers knew appellant was a juvenile. Detective Thorsen himself determined that someone should be appointed to act in loco parentis before questioning appellant. Detective Thorsen knew that appellant's parents were unavailable (there is no claim otherwise; Thorsen acted in good faith in coming to that conclusion); but once he made a decision to select somebody else, he obligated himself and the state to appoint someone neutral and credible. According to appellant's attorney, appellant had only completed the ninth grade and had difficulty reading and writing English. Thorsen made the decision that he should find some adult to act in loco parentis. The one person he selected, appellant's older brother Edward, was the one person so impermissibly tainted that he could not possibly serve.

At the police station, Thorsen had first interviewed Edward who made statements *incriminating appellant*, his own juvenile brother. *After* getting the statements from Edward that incriminated appellant, Thorsen decided Edward would be the appropriate person to advise his juvenile brother on whether to waive his right to remain silent, waive his right to consult with an attorney, and confess to a serious crime.

To start with, it can be noted that with both of appellant's parents unavailable, Thorsen had no constitutional mandate to select a surrogate. Such is not the law. Across the country, particularly in inner cities, juveniles accused of serious crimes may well be arrested who do not have living parents or who, if they have living parents, have no idea of their whereabouts. If the law were that no juvenile could ever be questioned without his parents present, juveniles could commit crimes and avoid interrogation with impunity. But a responsible parent, when available, is advisable, and Thorsen, recognizing this,

felt an obligation to select somebody. Minn. R.Juv.P. 6.01, subd. 2 (1994). It is at that point the prejudicial error was made. Once law enforcement makes a decision among different options, they need to make the right one. For instance, if law enforcement decides that they have a suspect "in custody" and concedes that they are about to start a custodial interrogation, if they decide they need to read the *Miranda* warnings, they are now bound to read them in full and correctly. They are bound to get a knowing and intelligent waiver. Another example would be entry into a home. If law enforcement makes a decision that they do not have probable cause, or a home entry warrant, and must rely on permission, they now have an obligation to be sure they get clear permission. So here, once Thorsen made a decision that he should find a stand-in for the parents, he put himself under a legal obligation to find an appropriate person. Edward, the older brother, could not possibly be such a person. From the plain facts of the arrest, we know that Edward and the other adult accompanying appellant were also suspects. They easily had exposure as aiders and abetters, even though the illegal drugs were taken from appellant. Edward directly implicated appellant. Then Edward was allowed to talk to appellant alone for approximately 12 minutes. After that unknown conversation with Edward, the state claims appellant agreed to confess to Thorsen. The possibility is there that Edward and appellant discussed the fact that if appellant, as a juvenile, took the rap, Edward, as an adult, could be off the hook for a more serious offense. We do not know that that happened. But we also do not know that it didn't. Had Edward been one of appellant's parents or an appropriate other person to advise him, perhaps we could lay the burden of actively proving coercion on appellant. But the law is clear. The party propounding the confession, here the state, bears the burden of showing it is admissible. Here, the state did not meet its burden because they offered a confession where the suspect was aided, at law enforcement's direction, by a person, not only a possible suspect himself, but one who the record shows directly implicated the suspect, appellant.

Put another way, if it had been deemed necessary to provide appellant with an attorney because appellant made a direct request for an attorney, would the dictates of *Miranda* be satisfied if appellant were provided with an attorney who was both a possible suspect himself; and someone who would be called as a witness by the state because the attorney directly implicated appellant? The answer is, of course not.

With the concession by the state that Edward first talked to Detective Thorsen and directly implicated appellant in the possession of illegal drugs, and with the decision by Detective Thorsen that appellant was entitled to a stand-in for his unavailable parents, the reversible error happened the minute Edward was selected to be appellant's guardian and to assist him with the undeniably serious decision of waiving his right to counsel, waiving his right to remain silent, and making the decision to confess.

I dissent and would remand for a new trial.