**In the Matter of the WELFARE OF M.D.R.**

No. A04–831.

Court of Appeals of Minnesota.

March 22, 2005.

Leonardo Castro, Chief Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, MN, for appellant M.D.R.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, HUDSON, Judge, and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellant M.D.R. challenges a district court order adjudicating him delinquent on a charge of possession of a firearm by an underage person in violation of Minn.Stat. § 624.713, subds. 1(a), (2) (Supp.2003), arguing that two Minneapolis police officers failed to show lawful cause either for stopping appellant or proceeding immediately to perform a safety pat-down search. Appellant was adjudicated delinquent based upon the discovery during the pat down that he possessed a pistol. Because the record does not show wrongful search conduct by the officers, we affirm.

## FACTS

On a Friday evening in February 2004, at approximately 10:00 p.m., Minneapolis police officer Jerry Johnson was on patrol when he heard an "officer-needs-help" call on his police radio. The police broadcast identified the location of the call as an entertainment complex known as "Block E" in downtown Minneapolis. Johnson was directly in front of an entrance to Block E when he heard the help call and responded immediately.

"Officer needs help" is a term of art among police officers indicating that an officer is injured or in danger and urgently needs help.[1] As Johnson explained, the "officer-needs-help" message is treated by

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. This type of call may be distinguished from a less urgent "officer-needs-assistance" call indicating that an officer simply needs backup.

police as one of the "highest priority" among calls received. The police dispatch contained no description of the situation, and Johnson did not know what had occurred inside Block E.

Johnson stated that as he was about to enter Block E, he saw "three guys running out the door." According to Johnson, the three saw him and gave him a look that Johnson described from experience as "oh, no, don't stop me." Johnson said that the men glanced left and right, appeared panicked, and had a look of avoidance.

Johnson called on his radio for assistance in stopping the individuals. He "stated that there were three [people] that just came running out the door, gave a brief description of their clothing and [said] that [Johnson] was going to try and stop them." In his description, Johnson noted that one of the individuals was wearing a red jacket.

Johnson testified that the men first walked north toward Sixth Street, then turned and headed south toward Seventh Street, running at one point. Finally, the individuals split up, one going to Johnson's right and the other two, including appellant, going to Johnson's left. Johnson stopped the person who went to his right, "patted him down, handcuffed him and put him in [the squad] car until [Johnson] could determine what was going on" regarding the help call. Johnson estimated that he detained this individual "within ... 10 to 15 seconds" of hearing the call.

Minneapolis police officer Andrew Enriquez was off duty and working as a security guard at City Center, a shopping mall directly across the street from Block E, when he heard the officer-needs-help call.[2] Enriquez testified that he "felt compelled

to" respond because the police are "taught early on from rookie school that those are calls that you drop everything and run toward." He also stated that he viewed an officer-needs-help call as "the worst set of circumstances.... An officer could be shot, [an] officer could be lying down wounded somewhere. Also, an officer is more than likely involved in a physical confrontation."

Enriquez ran out onto Hennepin Avenue, saw Johnson at the corner of Seventh and Hennepin, and heard another call on his radio. This call was from Johnson who "advised that he had two black males running away from him, [one of whom] was wearing a red jacket." Enriquez knew that Johnson had responded to the officer-needs-help call and "immediately assumed ... that whatever parties ... were running away from him were somehow involved in that call."

As Enriquez responded to the call, he noticed two individuals, including appellant, who was wearing a red jacket, walking toward him. As he approached the men, Enriquez slowed down and averted his eyes until he was near them. When Enriquez passed the men, he grabbed appellant and "placed him up against the wall." Enriquez told appellant that he was stopping him because he matched the description of someone who was running away from the scene of an officer-needs-help call. Enriquez then "patted down" both men. In support of his decision to frisk the men, Enriquez stated that

> [b]ased on the [officer-needs-help] call, I had every reason to believe that these two were somehow involved. And for my safety I just wanted to make sure

---

2. Enriquez was wearing his police uniform at the time. When working off-duty, but in uniform, officers are required to sign in with the police department "so that they know there is a uniformed officer working at the various areas," and are expected to monitor their police radios.

that there were no weapons within reach on the suspects' body that ... might jeopardize my life, so I just did a quick pat search for anything that might be construed as a weapon.

When Enriquez frisked appellant, he recovered a loaded .45 caliber pistol; appellant cooperated with the search. Appellant was subsequently charged in a delinquency petition with one count of possession of a pistol by an underage person in violation of Minn.Stat. § 624.713, subds. 1(a), (2).

At his *Rasmussen* hearing to suppress the weapon, appellant argued that it was seized in violation of the Minnesota and United States Constitutions; he contended that the police did not have an articulable suspicion to detain or frisk him. The juvenile court denied his motion.

An adjudicatory and dispositional hearing was later held based on stipulated facts consisting of the police reports. The court found appellant guilty of the charged offense and adjudicated him delinquent. The court ordered appellant to complete 100 hours of community service and imposed a stayed, short-term correctional placement. M.D.R. appeals from the delinquency adjudication. He does not challenge the dispositional order.

## ISSUE

Were appellant's rights against an unreasonable search violated by either the stop or the pat-search of his person for a weapon?

## ANALYSIS

■ Both the United States and the Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A district court's decision regarding the suppression of evidence, including the constitutionality of a limited investigatory stop and pat-search, is reviewed de novo. *State v. Munson*, 594 N.W.2d 128, 135 (Minn.1999). Where, as here, the facts are not in dispute, we must determine whether the police officers articulated an adequate basis for their actions. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999); *see also State v. Saffeels*, 484 N.W.2d 429, 430 (Minn.App.1992) ("In reviewing [district] court rulings on fourth amendment issues, this court accepts the [district] court's findings of fact, unless clearly erroneous, but independently applies fourth amendment case law to the facts so found."), *review denied* (Minn. June 1, 1992).

### 1. The Stop

■ Appellant first argues that his detention was improper because the officers did not have a reasonable basis to suspect that he was engaged in criminal activity. A determination of whether the police have reasonable suspicion to conduct an investigative stop is based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The police may conduct a limited stop to investigate suspected criminal activity if they can point to specific and articulable facts that reasonably warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). "Reasonable, articulable suspicion requires a showing that the stop was not the product of mere whim, caprice, or idle curiosity." *State v. Waddell*, 655 N.W.2d 803, 809 (Minn.2003) (quotation omitted).

■ Although we must determine the propriety of the stop by Enriquez, his basis for stopping appellant includes Johnson's knowledge of the situation, as well as the information that Johnson reported to him. *See In re Welfare of G. (NMN) M.*, 542 N.W.2d 54, 57 (Minn.App.1996) (noting

that "the grounds for making the stop can be based on the collective knowledge of all investigating officers"), *aff'd*, 560 N.W.2d 687 (Minn.1997); *see also United States v. Chhunn*, 11 F.3d 107, 110 (8th Cir.1993) (looking to the collective knowledge of the officers to determine the reasonableness of a *Terry* stop); [3] *United States v. Horne*, 4 F.3d 579, 585 (8th Cir.1993) (noting requirement that there be "some degree of communication" of knowledge).

Appellant contends that the stop was based merely on general concern arising from the help call and that Enriquez had no individualized articulable suspicion that appellant was engaged in criminal activity. Enriquez based his stop on the original help call and the subsequent call from Johnson advising that two individuals were fleeing the scene, circumstances that require our initial attention to the question of whether Johnson had reason to request a stop of the two individuals.

■ Appellant argues that his situation is similar to that presented in *In re Welfare of M.D.B.*, 601 N.W.2d 214 (Minn.App. 1999), *review denied* (Minn. Jan. 18, 2000), where this court explained that a suspect's nervousness did not provide reasonable grounds for a stop and search, noting that nervousness is not unusual when an individual is confronted by an armed, uniformed officer in a squad car with flashing lights. *Id.* at 216; *see also State v. Syhavong*, 661 N.W.2d 278, 282 (Minn.App. 2003) (noting that nervousness is not sufficient "by itself" to provide reasonable suspicion). Although it is true that innocent behavior, in and of itself, may not generally provide reasonable suspicion, "innocent factors in their totality, combined with the investigating officer's experience … can be sufficient bases for finding reasonable

suspicion." *State v. Martinson*, 581 N.W.2d 846, 852 (Minn.1998) (quotation omitted). Again, the supreme court has stated that in light of the circumstances, "innocent activity might justify the suspicion of criminal activity." *State v. Johnson*, 444 N.W.2d 824, 826 (Minn.1989).

■ Johnson was responding to an officer-needs-help call, one that, in the experience of police, is counted as a message of the "highest priority." He had no information about the specifics of the situation, but reasonably presumed that it was serious. Immediately after receiving the call, Johnson observed three individuals, including appellant, running from Block E—the scene of the help call. He noted that these individuals had "a general look of panic on their face[s]" and acted as if they were looking for a way to get away from him. The group immediately moved away from Johnson, running at one point, and then split up.

Although these factors taken individually might not justify Johnson's request to stop the individuals, the combination of appellant's apparent nervousness, evasive behavior, and the fact that he was running from the scene of an officer-needs-help call provides reasonable grounds for such a request. *See, e.g., State v. Dickerson*, 481 N.W.2d 840, 843 (Minn.1992) (holding that defendant's evasive conduct after eye contact with police and observed departure from a building with a history of drug activity justified the stop), *aff'd*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

■ Enriquez knew that Johnson was responding to the officer-needs-help call. He also heard Johnson's call stating that

---

**3.** In his reply brief, appellant argues that the "collective-knowledge rule" does not apply to *Terry* stops. As *Welfare of G. (NMN) M.*, 542 N.W.2d at 57, and *Chhunn*, 11 F.3d at 110, indicate, this argument is misguided.

two black males, one of whom was wearing a red jacket, were running away from Johnson. Within a few seconds, Enriquez saw two individuals matching Johnson's description approaching him from the direction of Block E. It was therefore reasonable for Enriquez to assume that these individuals were those being sought by Johnson. Given the totality of the circumstances and the collective knowledge of the officers, Enriquez had a reasonable articulable suspicion of criminal activity sufficient to justify his stop of appellant.

## 2. The Search

 Appellant argues that even if the police lawfully detained him, they did not have reasonable justification for frisking him. A police officer may conduct a pat-search narrowly confined to a frisk for weapons if the officer reasonably believes that such a search is necessary to protect the officer's safety or the safety of others. *State v. Gilchrist*, 299 N.W.2d 913, 916 (Minn.1980). "Reasonableness ... depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (quotation omitted). A pat-search is permissible if the officer has an "objective articulable basis" for thinking that a lawfully stopped person may be armed and dangerous. *State v. Payne*, 406 N.W.2d 511, 513 (Minn.1987) (citing *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889).

 The supreme court has noted that the right to frisk a person follows directly from the right to stop a person where the person was stopped based upon "an articulable suspicion of a crime of violence." *Payne*, 406 N.W.2d at 513 (quotation omitted). Such an articulable suspicion is present "whenever the suspect has

been stopped ... [for] a type of crime for which the offender would likely be armed...." *Id.* (quotation omitted) (variation in original). The appropriate inquiry is "whether a reasonably prudent person in the specific circumstances would believe that his or her safety was in danger." *State v. Crook*, 485 N.W.2d 726, 729 (Minn. App.1992) (citing *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883), *review denied* (Minn. Aug. 4, 1992). Given the serious nature of an officer-needs-help call, the likelihood that such a call was precipitated by some type of threatening physical altercation potentially involving weapons, and the very short interval of time, Enriquez reasonably viewed the situation as presenting the "worst of circumstances." Under these circumstances, Enriquez had a justifiable basis for believing that his safety might be in danger, and his pat-search of appellant was reasonable.

## DECISION

The totality of the circumstances—appellant's nervousness, his evasive behavior, and the fact that he was running from the scene of an officer-needs-help call—provided reasonable justification for a *Terry* stop. The serious nature of the call and the possibility that weapons were involved justified the pat search of appellant. The juvenile court did not err in denying appellant's motion to suppress the weapon found during the search.

**Affirmed.**