In the Matter of the WELFARE
OF R.J.E., child.

No. C4–00–2189.

Court of Appeals of Minnesota.

July 3, 2001.

Review Granted Sept. 11, 2001.

John M. Stuart, State Public Defender, Charlann Winking, Assistant State Public Defender, Minneapolis (for appellant).

Mike Hatch, Attorney General, St. Paul,and Roger S. Van Heel, Stearns County Attorney, Suzanne Bollman, Assistant Stearns County Attorney, St. Cloud (for respondent).

Considered and decided by
TOUSSAINT, Chief Judge,
STONEBURNER, Judge, and
LINDBERG, Judge.*

## OPINION

STONEBURNER, Judge

R.J.E. appeals from adjudication of delinquency based on the district court's finding that he committed criminal sexual conduct in the fifth degree. R.J.E. argues that the district court erred by denying his motion to suppress a statement that was taken from him by a police officer at his school in violation of his Miranda rights, and that without the statement, there is insufficient evidence to support a finding that he committed the offense. The matter was tried on stipulated facts consisting of pertinent police reports, including the statement of the victim, pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980). The district court found that R.J.E. committed criminal sexual conduct in the fifth degree and adjudicated R.J.E. delinquent. Because R.J.E. was entitled to a Miranda warning prior to the interroga-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tion, we reverse the district court's denial of the motion to suppress. Because even without R.J.E.'s statement there is not a reasonable possibility that the fact-finder might have reached a different result, the district court's failure to suppress the statement was harmless error, and we affirm the adjudication of delinquency.[1]

## FACTS

On October 7, 1999, a uniformed St. Cloud police officer, working as a liaison officer at Apollo High School, received a report of inappropriate acts involving a male and female student. The officer had two uniformed Apollo High School security guards escort R.J.E. from his classroom to the 10' × 10' office shared by school security and the liaison police officer. When they arrived at the office, one of the security guards searched R.J.E. The school social worker was also present so that there were four adults in the office with R.J.E., three of whom were in uniform. The door to the office was closed. The police officer started a tape recorder and began an interrogation. The session began with the police officer stating on the tape:

This will be in to case 99034645. The date is 10/07/99. The time is 1503 hours. This is Officer Weleski. This is in reference to a sexual assault that occurred at Apollo High School on this date. I'm in the liaison office at Apollo High School.

The police officer then identified who was present, had R.J.E. state his "full legal name and date of birth for the record," and then began questioning R.J.E. The police officer did not give R.J.E. a Miranda warning. R.J.E. was 15 years old at the time, and the parties do not dispute that police or school officials had never questioned R.J.E. prior to this incident. The police officer never told R.J.E. that he was free to leave or that he could decline to answer any questions. Although the police officer testified that he would have allowed R.J.E. to leave the room had he asked, R.J.E. testified that he believed that either the police officer or one of the security guards would have prevented him from leaving. The police officer, who had interviewed the victim and a witness prior to questioning R.J.E., testified that R.J.E. was a suspect in a crime at the time of the questioning. R.J.E. was not informed that he could speak with his mother or contact an attorney before answering any questions, and the officer did not notify R.J.E.'s mother before initiating the interrogation. The officer interviewed R.J.E. for approximately 13 minutes (from 3:03 p.m. to 3:16 p.m.), although R.J.E. believed it lasted longer. After the interview, the police officer turned R.J.E. over to the vice-principal because, according to the police officer's testimony, "there are school sanctions as well." After the vice-principal questioned R.J.E., he released R.J.E. to his mother.

The victim, A.G., in a statement submitted to the district court as part of the stipulated facts, alleged that she was in the commons area at Apollo High School on October 7, 1999, when R.J.E. came to the area and sat on the chair on which she was seated. A.G. then moved to the other side of the table. When she left to go to class, R.J.E. walked with her and grabbed her chest using his full open hand on her breast, and he asked A.G. if she would kiss him and if she wanted to have sex with him. A.G. told him to "shut up," and R.J.E. then said she "should give him" 30 minutes in the bathroom with her. A.G. told him to "shut up" again, and R.J.E.

1. R.J.E. challenges only the finding that he committed the charged offense. He does not challenge the adjudication of delinquency based on commission of the offense.

reached from behind A.G. and touched her crotch area.

## ISSUES

I.   Was R.J.E.'s interrogation custodial?

II.  If admission of R.J.E.'s statement was error, is the error harmless?

## ANALYSIS

### Standard of Review

■ R.J.E. claims that the district court erred by finding that he was not in custody when he was questioned and by failing to suppress his statement. "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999) (citation omitted).

### I. R.J.E.'s Interrogation was Custodial

■ The district court held that R.J.E. was not entitled to a Miranda warning because he was not in custody when police questioned him. A Miranda warning is required when a police officer conducts a custodial interrogation of a suspect. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The state concedes that R.J.E. was interrogated, and therefore our task is to determine whether R.J.E. was in custody. *See State v. Tibiatowski,* 590 N.W.2d 305, 308 (Minn.1999). We consider a suspect to be in custody if a reasonable person under the circumstances would believe that he or she was in police custody to the degree associated with formal arrest. *State v. Wiernasz,* 584 N.W.2d 1, 2–3 (Minn.1998) (citation omitted); *State v. Miller,* 573 N.W.2d 661, 670 (Minn.1998) (citation omitted); *see In re Welfare of G.S.P.,* 610 N.W.2d 651, 657 (Minn.App.

2000) ("The test is not whether a reasonable person under the circumstances would believe they were not free to leave, but whether a reasonable person under the circumstances would believe they were in police custody of the degree associated with formal arrest."). In reaching this determination, we look to all of the surrounding circumstances, including the officer's and the suspect's behavior during the interrogation. *Wiernasz,* 584 N.W.2d at 4–5. Although we review the district court's findings of fact for clear error, we perform a de novo review of the district court's determination regarding custody and the need for a Miranda warning. *Miller,* 573 N.W.2d at 670; *State v. Hince,* 540 N.W.2d 820, 823 (Minn.1995).

■ In support of his argument that his interrogation was custodial, R.J.E. cites our recent decision in *In re Welfare of G.S.P.,* 610 N.W.2d 651 (Minn.App.2000). In *G.S.P.,* an assistant principal and a school-liaison police officer removed a 12–year–old student from his classroom. *Id.* at 654. The assistant principal and the police officer questioned G.S.P. in the assistant principal's office. *Id.* The officer did not issue a Miranda warning, but he tape-recorded the questioning, which was done in the presence of three school officials. *Id.* The officer did not tell G.S.P. that he was free to leave or could talk to his parents. *Id.* Instead, the officer told G.S.P. that he had no choice but to answer the questions. *Id.* We held that G.S.P. was in custody during his interrogation and was entitled to a Miranda warning. *Id.* at 659.

■ Key to our decision in *G.S.P.* was the fact that the police officer failed to inform G.S.P. that he was not under arrest or that he was free to leave. *Id.* at 658 (citations omitted); *cf. Miller,* 573 N.W.2d at 670–71 (reasoning that, among other factors, an individual is not in custo-

dy if told that he or she is free to leave and not under arrest). Here, the interrogating officer failed to inform R.J.E. that he was free to leave or that he was not under arrest. The *G.S.P.* court also determined that the officer's tape-recording of the interview was "strongly suggestive of a custodial interrogation." 610 N.W.2d at 658; *see State v. Scales*, 518 N.W.2d 587, 592 (Minn.1994) (requiring that all custodial interrogations be recorded). Similarly, the recording of the interview with R.J.E. suggests to us that the interrogation was custodial. The state asserts that a general obligation to appear before a police officer and answer questions truthfully does not convert an interview into a custodial interrogation. *See Minnesota v. Murphy*, 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409 (1984). Nonetheless, where a "uniformed officer summons a juvenile from the classroom to the office and actively participates in the questioning, the circumstances suggest the coercive influence associated with a formal arrest." *G.S.P.*, 610 N.W.2d at 658.

R.J.E.'s interrogation took place in a small room with the door closed; the police officer conducted the interrogation in the presence of two uniformed school security guards and a social worker; the police officer never informed R.J.E. that he could decline to answer questions or that he was free to leave; R.J.E. believed that he was not free to leave. *Cf. State v. Budke*, 372 N.W.2d 799, 801–02 (Minn.App.1985) (concluding that where high school student was called to principal's office to talk to police investigator, and the investigator told the student that he was not under arrest, that he was free to leave at any time, and that he did not have to talk to the investigator, restrictions placed on the student did not amount to restraint equivalent to formal arrest). Although the interrogation lasted only 13 minutes, R.J.E. was 15 years old and had no prior experience with questioning by police or school officials. R.J.E. reasonably believed that he was restrained to a degree equivalent to formal arrest.[2] We conclude that in light of all the surrounding circumstances, R.J.E. was in custody when the officer interrogated him, and the district court should have suppressed R.J.E.'s incriminating statements.[3]

**2.** In support of its argument, the state relies on our unpublished opinion, *In re Welfare of R.L.N.*, No. C1–98–26, 1998 WL 405026, *2 (Minn.App. July 21, 1998), *review denied* (Minn. Sept. 22, 1998), in which this court held that under somewhat similar facts, a juvenile was *not* in custody. *R.L.N.*, however, is unpublished and was decided two years before *G.S.P.*, and therefore is of no precedential value. *See Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App.1993) (holding that unpublished opinions are of persuasive value "[a]t best" and not precedential); *see* Minn.Stat. § 480A.08, subd. 3(c) (2000) (providing unpublished decisions of the Minnesota Court of Appeals have no precedential value).

**3.** Although only of persuasive value, we find a decision by the Washington Court of Appeals instructive. *See Washington v. D.R.*, 84 Wash. App. 832, 930 P.2d 350 (1997). In *Washington v. D.R.*, a 14–year–old boy was found to be in custody when he was interviewed by a police officer in the presence of the assistant principal and a school social worker. *Id.* at 353. The interview took place in the assistant principal's office, and the boy was told that he did not have to answer questions, but he was not otherwise given Miranda warnings. *Id.* at 352. The boy did not believe that he was free to leave. *Id.* Over the course of the interview, the officer indicated that he knew the boy had committed a sexual offense. *Id.* The Washington court framed the inquiry as "whether a 14–year–old in D.R.'s position would have 'reasonably supposed his freedom of action was curtailed' " and concluded that D.R. was in custody during his interview "in light of [the officer's] failure to inform him he was free to leave, D.R.'s youth, the naturally coercive nature of the school and principal's office environment for children of his age, and the obviously accusatory nature of the interrogation." *Id.* at 353 (citation omitted).

## II. Harmless Error

Our analysis does not end, however, with the determination that the district court erred in admitting R.J.E.'s statement. The state claims that even if R.J.E.'s statement is suppressed, evidence independent of the statement sufficiently supports R.J.E.'s delinquency adjudication. On appeal, the relevant inquiry in a harmless-error analysis is not whether the evidence was sufficient, but whether a reasonable fact-finder would have reached a different result had R.J.E.'s statement not been admitted. *See State v. Dillon*, 532 N.W.2d 558, 558 (Minn.1995) ("[T]he mere fact that the evidence of guilt was 'sufficient' means nothing. * * * What is relevant in harmless error impact analysis is how strong the evidence was, not whether it was 'sufficient.' "); *see also State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994) ("[W]hen dealing with a claim of erroneous admission of evidence * * * the question is whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict * * *."). We may uphold R.J.E.'s delinquency adjudication notwithstanding the officer's violation of his Miranda rights, provided that the admission of his statement was harmless beyond a reasonable doubt. *See State v. Jones*, 556 N.W.2d 903, 910 (Minn.1996); *see also State v. Juarez*, 572 N.W.2d 286, 291 (Minn.1997) (stating conviction may stand if erroneously admitted statement was harmless beyond a reasonable doubt). An error is harmless beyond a reasonable doubt "[i]f the verdict actually rendered was surely unattributable to the error." *Jones*, 556 N.W.2d at 910; *see Juarez*, 572 N.W.2d at 291 (determining if evidence is harmless based on whether challenged evidence contributed to defendant's conviction). Here, after an adverse pretrial ruling, R.J.E. waived his right to trial and submitted the case to the court on stipulated facts. The stipulated facts include a statement made by the victim to the police officer describing R.J.E.'s grabbing her breast and touching her crotch. The complainant also told police that R.J.E. later apologized for the incident. The district court adjudicated R.J.E. delinquent on the charge of fifth-degree criminal sexual conduct, which requires only that R.J.E. "engage[ ] in nonconsensual sexual contact." Minn.Stat. § 609.3451, subd. 1 (2000); *see* Minn.Stat. § 609.341, subd. 11(a)(i) and (iv) (2000) (defining "sexual contact" as "the intentional touching by the actor of the complainant's intimate parts, or * * * the touching of the clothing covering the immediate area of the intimate parts."). The record does not contain any exculpatory evidence. The victim's statements demonstrate beyond a reasonable doubt that R.J.E. committed criminal sexual conduct in the fifth degree, which supports R.J.E.'s delinquency adjudication. *See In re Welfare of S.M.J.*, 556 N.W.2d 4, 6 (Minn.App.1996) (acknowledging that this court must assume that the factfinder believed testimony supporting the determination and disbelieved any contrary evidence) (citing *State v. Braylock*, 501 N.W.2d 625, 628 (Minn.1993)).

We are mindful of the supreme court's concern about employing a harmless-error analysis under circumstances where a party stipulates to facts pursuant to a Lothenbach stipulation. *See State v. Munson*, 594 N.W.2d 128, 143–44 (Minn.1999) ("[U]nder the facts of this case, we are hesitant to apply a harmless error analysis where an appellant has stipulated to the state's facts only to preserve the evidentiary issues for appeal and has not had a chance to challenge the state's evidence or present evidence of his own.") (citing *Berkemer v. McCarty*, 468 U.S. 420, 444, 104 S.Ct. 3138, 3152–53, 82 L.Ed.2d 317 (1984) (recognizing difficulty in determining whether erroneous admission of particular

evidence affected outcome of case where appellant pleads no contest in order to preserve issues for appeal)). We note, however, that in *Munson* the only direct evidence of Munson's crime was his statement, which the district court erroneously failed to suppress. 594 N.W.2d at 143. Here, the evidence against R.J.E. included statements made by the victim, who identified R.J.E. and detailed the unwanted touching. Counsel for R.J.E. raised for the first time at oral argument that R.J.E. may have a claim of ineffective assistance of counsel. But we do not address issues raised for the first time in oral argument. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). Under the rather unique procedural circumstances of this case, we conclude that the district court's failure to suppress R.J.E.'s custodial statements, although error, is harmless error.

## DECISION

Based on all the surrounding circumstances, we hold that R.J.E. was in custody during his interrogation by a police officer at the school and was entitled to a Miranda warning prior to questioning. We reverse the district court's denial of R.J.E.'s motion to suppress his statement. Because the evidence submitted to the district court supports a finding beyond a reasonable doubt that R.J.E. committed criminal sexual conduct in the fifth degree, and because commission of that offense supports the adjudication of delinquency, we affirm.

**Affirmed in part and reversed in part.**