In the Matter of the WELFARE
OF T.J.C., Child.

No. C3–02–1622.

Court of Appeals of Minnesota.

June 3, 2003.

John Stuart, Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, St. Paul; and Janice S. Kolb, Mille Lacs County Attorney, Wade Anthony Kish, Assistant

Mille Lacs County Attorney, Milaca, for respondent.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, SCHUMACHER, Judge, and WILLIS, Judge.

## O P I N I O N

### G. BARRY ANDERSON, Judge.

Following a bench trial, appellant was adjudicated delinquent for commission of criminal sexual conduct in the second degree. Appellant challenges his adjudication, claiming that his statement, taken while he was in custody, was erroneously admitted at trial, and there was insufficient evidence to support his adjudication. Although we conclude that appellant was in custody and should have been informed of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we conclude that even without appellant's statement, sufficient evidence was admitted to sustain the adjudication.

### FACTS

On August 21, 2000, appellant T.J.C., then fifteen years of age, was playing with M.J., then four years of age, on a trampoline beside M.J.'s house, while M.J.'s mother watched. At some point mother went into the house. While mother was inside, the telephone rang and she answered it, but watched appellant and M.J. through the window. While mother talked on the telephone, she observed appellant lay down on the trampoline with M.J. beside him. Although initially she "couldn't really see what [M.J. and appellant] were doing," mother testified that she saw M.J. "reach over and grab [appellant's] penis." At first mother thought this was an accident but she testified that after the initial touching, appellant "grabbed [appellant's]

crotch and moved it around, and then I saw [appellant] look at [M.J.], say something to her, and then [M.J.] went and grabbed him again." At this point mother ran out of the house and told appellant to leave. Mother then called her husband and the police.

Roughly an hour after the incident on the trampoline, mother and father spoke with M.J. and M.J.'s sister, A.J. Mother testified that during this conversation M.J. stated that appellant had asked her to touch his penis.

On August 25, 2000, M.J. was interviewed by Mille Lacs County Sheriff's investigator, Alan Marxhausen. At this interview, M.J. did not specifically mention the "trampoline incident," but stated that appellant "wants me to touch his penis. That's all he does. * * * He let me touch his penis. That's all he done [sic]." M.J. also mentioned an incident that occurred upstairs, when appellant came into her house "butt naked" and had her touch his penis. M.J stated that appellant then touched M.J.'s "potty" and that this happened "a lot." M.J. answered "yeah" when asked if appellant "put his fingers in [M.J.'s] potty." M.J. did not have a medical examination.

On October 18, 2002, appellant was pulled from his special education class and escorted by his teacher to the school's principal's office. In the office the school's liaison police officer, Shelly Milton, and Milaca Police Chief Michael Mott, were waiting. Mott, Milton, and appellant went into an office adjoining the principal's office and the door was closed behind them. Mott made no attempt to contact appellant's parents prior to interviewing appellant.

Mott had an unrecorded conversation with appellant, lasting roughly two to three minutes. In the taped and tran-

scribed portion of appellant's statement, Mott told appellant that he was not under arrest, and that "when we [are] completed [appellant] would be able to get up and walk out of here and go home on the school bus[.]" Mott later reiterated that appellant would be free to go, and that he could get up and leave any time. During the recorded portion of the interview, appellant admitted that while babysitting M.J. and A.J., they were playing a game during which he "decided to take off [his] my pants." Appellant stated that M.J. and A.J. attempted to pull his underwear off but were unable to, and it was during the struggle to get his underwear off that M.J. touched his penis. There was no mention of the incident on the trampoline during this interview. Appellant was not, at any time prior to or during the interview, informed of his Miranda rights. At trial, appellant testified that he was "terrified" while being questioned by Mott.

Following trial, appellant was adjudicated delinquent for commission of criminal sexual conduct in the second degree. This appeal followed.

### ISSUES

I. Was appellant in custody for Miranda purposes when questioned by law-enforcement?

II. Was there sufficient evidence to support appellant's adjudication as delinquent?

### ANALYSIS

#### I

█ Appellant contends that when he was questioned in a closed room in the presence of two police officers, without a parent present, he was in custody and should have been informed of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because he was not so informed, appellant argues that his statement to Mott should have been suppressed and his adjudication reversed.

█ When reviewing pretrial orders related to suppressing evidence, this court reviews the record independently to determine whether the district court erred as a matter of law. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). If the district court erred, appellant is entitled to a new trial unless the error was harmless beyond a reasonable doubt. *State v. Juarez*, 572 N.W.2d 286, 291 (Minn.1997). In determining if an error was harmless beyond a reasonable doubt, an appellate court must look at the effect of the error, *i.e.*, whether or not the error had an impact on the verdict. *Id.* A very important factor in determining if an error was harmless beyond a reasonable doubt is whether in the absence of the evidence erroneously admitted, the remaining evidence was so overwhelming as to compel a reasonable factfinder to convict. *Id.*

█ Under the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article 1, Section 7 of the Minnesota Constitution, no defendant in a criminal case can be compelled by the state to be a witness against himself. U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. To safeguard this constitutional right, an uncounseled individual, subject to custodial interrogation, must be informed of his rights under *Miranda*. *In re G.S.P.*, 610 N.W.2d 651, 656 (Minn.App. 2000). Interrogation is custodial if the person has been placed under arrest or had his freedom of movement restrained to a "degree associated with a formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995) (citation omitted).

When determining whether Miranda warnings are required, this court must first determine if the subject of the questioning was in "custody." *State v. Edrozo,* 578 N.W.2d 719, 724 (Minn.1998). Although there is no "bright-line rule" to apply in making this determination, "whether a person is in custody for Miranda purposes is a mixed question of law and fact." *G.S.P.,* 610 N.W.2d at 657. The ultimate issue is whether a reasonable person, given the circumstances surrounding the interrogation, would have felt free to terminate the interrogation and leave. *Id.* Once it has been determined that an individual was in custody, the nature of the questioning must be analyzed to determine if the individual was subject to "custodial interrogation." *Id.* at 656, 657.

This court reviews the district court's factual determinations of the circumstances surrounding the interview under the clearly erroneous standard, but independently reviews the district court's determination of custody. *State v. Wiernasz,* 584 N.W.2d 1, 3 (Minn.1998). Because the underlying facts of this case are not in dispute on appeal, this court's review is de novo. *State v. Miller,* 573 N.W.2d 661, 670 (Minn.1998).

Circumstances to consider in determining whether a juvenile is in custody include: the age and intelligence and education of the child, the child's prior experience with law-enforcement, the surroundings during questioning, the presence of one or more uniformed officers, whether the child was given the option of having a parent or an attorney present, and whether the interview was tape-recorded. *In re D.B.X.,* 638 N.W.2d 449, 453, 456 (Minn. App.2002) (courts consider child's age, intelligence, education, inexperience with the law, inadequacy of the warning, and absence of parents); *In re R.J.E.,* 630 N.W.2d 457, 459, 461 (Minn.App.2001)

(court considered that the child was not informed that he could have a parent or attorney present during questioning, the only door to the room in which child was questioned was closed, the presence of uniformed police officers, and that the interrogation was recorded), *rev'd on other grounds,* 642 N.W.2d 708 (Minn.2002).

Here, the fifteen-year-old juvenile had no prior experience with law enforcement. The interview was conducted by two officers, at least one uniformed, in a small, closed room. Appellant was not informed that he could have a parent or attorney present and no attempt was made to contact appellant's parents. Although a portion of the interview occurred off-tape, much of the questioning was tape-recorded. Appellant was told, however, on a couple of occasions that he was free to leave, and that he was not under arrest.

Though these circumstances might not amount to custodial interrogation if the subject were an adult, in the case of a juvenile, we conclude that this interview was not devoid of psychological intimidation and was strongly suggestive of the coercive influence associated with formal arrest. *See G.S.P.,* 610 N.W.2d at 658. When a uniformed officer summons a child from the classroom and actively participates in questioning him, the circumstances strongly suggest the presence of coercive influence associated with formal arrest. *State v. Tibiatowski,* 590 N.W.2d 305, 310 (Minn.1999); *G.S.P.,* 610 N.W.2d at 658. Mott knew that appellant was the target of a criminal sexual conduct investigation, and that was his reason for summoning appellant to the principal's office. Mott asked appellant questions designed to elicit responses concerning such conduct. Additionally, a tape-recorded interview is strongly suggestive of custodial interrogation. *Id.* at 658. We conclude that appellant was in custody and was

subject to custodial interrogation and should have been informed of his constitutional rights.

 In addition, we find it significant that no attempt was made to contact appellant's parents to inform them that their child was going to be questioned by law enforcement. Although the voluntariness of appellant's statement is not directly at issue, whether a parent is present during questioning is a factor to be considered when determining whether a child's statement to police is voluntary. *State v. Ouk,* 516 N.W.2d 180, 185 (Minn.1994). Given the facts of this case, appellant's parents should have been notified prior to questioning and should have been allowed the opportunity to be present during the interview.

 Juveniles and adults are entitled to be informed of their constitutional rights. *State v. Loyd,* 297 Minn. 442, 445, 212 N.W.2d 671, 674 (1973). The fact that a juvenile is told he is free to leave and need not answer questions is one factor in determining whether custodial interrogation has occurred, but it is only one factor and is not determinative.

 Having concluded that the statement should have been suppressed, we must now consider the effect of the erroneous admission of the statement. *Juarez,* 572 N.W.2d at 291. Appellant is entitled to a new trial unless the admission of his statement was harmless beyond a reasonable doubt. *Id.* If the weight of the evidence properly admitted justifies the verdict, appellant's adjudication will be upheld. *Id.*

 As the trial court noted, this case is unlike most criminal-sexual-conduct cases because there was a witness to the abuse. Here, mother witnessed the act for which appellant was charged and convicted. Mother saw M.J. touch appellant's genital area twice and when asked why M.J. did so, M.J. replied, "[b]ecause he told me to." The district court also noted the prominent role of M.J. in this trial, finding M.J. credible and stating that M.J. had probably said more in this case than any child victim the district court had previously seen. The district court specifically noted that M.J. testified of her own volition and clearly stated that she had touched appellant's penis and that he had told her to do so.

Additionally, although the district court noted appellant's statement was "important," the district court also noted that appellant's statement did not appear to relate to the incident on the trampoline for which he was ultimately adjudicated delinquent. While it is unclear what weight the district court attributed to appellant's statement, the district court had other evidence, overwhelming in character, on which to rely in adjudicating appellant delinquent. Therefore the admission of appellant's statement was harmless beyond a reasonable doubt.

## II

 Appellant argues that the evidence at trial was not sufficient to support the district court's decision to adjudicate him delinquent for commission of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343, subd. 1(a)(2000).

 When considering a claim of insufficient evidence, this court painstakingly analyzes the trial record to determine if the evidence, viewed in the light most favorable to the fact-finder's decision, is sufficient to allow the finder of fact to reach the conclusion it did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). Evidence is sufficient to support adjudication if, given the facts in the record and legiti-

mate inferences drawn from those facts, the fact-finder could reasonably conclude that the accused committed the crime. *State v. Wilson*, 535 N.W.2d 597, 605 (Minn.1995). This court assumes the fact-finder believed that evidence in favor of the outcome, and disbelieved that to the contrary. *State v. James*, 638 N.W.2d 205, 212 (Minn.App.2002), *review denied* (Minn. Mar. 27, 2002). These standards apply in cases tried to a jury or, as here, the court. *State v. Ibarra*, 355 N.W.2d 125, 130 (Minn.1984).

■ The elements that must be established to adjudicate appellant delinquent in this case are that (1) M.J. was under 13 years of age, (2) appellant was more than 36 months older than M.J., (3) M.J. was induced to touch appellant's intimate parts, and (4) appellant had sexually aggressive intent in so inducing M.J. Minn.Stat. §§ 609.341, subd. 11(a)(ii), 609.343, subd. 1(a)(2000).

It is not disputed that, at the time of the alleged incident, M.J. was four-years-old and appellant was fifteen-years-old. Therefore, elements one and two were satisfied beyond a reasonable doubt. To establish element three, the state properly offered the following evidence:[1] (1) testimony of mother that she saw M.J. grab appellant's penis, through his clothes, and, after appellant said something to M.J., she did so again, and that when mother questioned M.J. about this, M.J. said that appellant told her to do it; (2) testimony of Investigator Alan Marxhausen that M.J. told him, during an investigative interview, that appellant "wants me (M.J.) to touch his penis;" (3) testimony of A.J. that when she asked M.J. if appellant asked her to touch his penis, M.J. said "yes;" (4) M.J.

testified that while appellant was lying on the trampoline, he asked her to touch him and she did so "[b]ecause he told [her] to;" (5) a video and transcription of Marxhausen's interview of M.J. wherein she states that she touched appellant's penis at his request. The district court specifically noted that it found mother's testimony and A.J.'s corroboration of M.J.'s allegation credible. The court also found M.J.'s in-court testimony to be credible, and to have been made of her own volition.

Even without the admission of appellant's statement, the district court could reasonably conclude beyond a reasonable doubt that appellant induced M.J. to touch his penis on the trampoline. Indeed, M.J.'s testimony alone could have supported the court's decision. *See* Minn. Stat. § 609.347, subd. 1 (2002) (in prosecution for violation of Minn.Stat. § 609.343, testimony of victim need not be corroborated). The state presented sufficient evidence to establish the third element of the charge.

The final element that must be established—that appellant acted with sexually aggressive intent—can be demonstrated through repeated attempts to accomplish sexual contact. *See In re C.S.K.* 438 N.W.2d 375, 377 (Minn.App.1988) (stating that repeated attempts to touch complainant's intimate parts evidenced sexually-aggressive intent). Mother testified that, on a prior occasion, she found appellant, fully clothed, with A.J. and M.J. in various stages of undress. M.J., in her interview with Marxhausen, mentioned a number of incidents where appellant had touched her, or she had touched him. Assuming the district court believed this evidence, these prior incidents demonstrate that the event

---

1. The state also offered testimony of Mott and a transcript of appellant's interview with Mott. Because we conclude that this evidence was not properly before the court we will not

consider it in determining if sufficient evidence existed to support the district court's conclusion.

for which appellant was charged was accomplished with sexually-aggressive intent. *See id.* ("[I]t is difficult to believe appellant's repeated attempts to touch complainant's intimate parts could be anything but sexually or aggressively motivated."). Therefore, on this record, we conclude that all elements necessary to sustain adjudication have been sufficiently established.

## DECISION

Appellant's statement was obtained in violation of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and was erroneously admitted at trial. But because there existed overwhelming evidence apart from appellant's statement to support the district court's adjudication of appellant as delinquent, the erroneous admission of the statement was harmless beyond a reasonable doubt. Because sufficient evidence supports the district court's adjudication, we affirm.

**Affirmed.**