**In the Matter of the WELFARE OF T.J.C., Child.**

**No. C3–02–1622.**

Court of Appeals of Minnesota.

Nov. 10, 2003.

John Stuart, State Public Defender, Lawrence Hammerling, Assistant Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Wade A. Kish, Assistant Mille Lacs County Attorney, Milaca, MN, for respondent.

Considered and decided by ANDERSON, Presiding Judge; SCHUMACHER, Judge; and WILLIS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Following a bench trial, appellant was adjudicated delinquent for commission of criminal sexual conduct in the second degree. Appellant challenged his adjudication in this court, and we concluded that although the police obtained appellant's statement in violation of his *Miranda* right and the district court erroneously admitted the statement into evidence at trial, the admission was harmless beyond a reasonable doubt. Because overwhelming evidence of appellant's delinquency existed apart from the statement, we affirmed. The supreme court reversed and remanded this court's determination on the issue of harmless error, and we now consider whether the adjudication of delinquency is consistent with the harmless error stan-

dard articulated in *State v. Juarez,* 572 N.W.2d 286 (Minn.1997). After careful review of the record, we conclude that, under *Juarez,* the district court's admission of appellant's statement to police was harmless error. Appellant's delinquency adjudication is, therefore, affirmed.

## FACTS

This appeal, before the court of appeals on remand from the supreme court, has the same underlying facts as *In the Matter of the Welfare of T.J.C., Child,* 662 N.W.2d 175 (Minn.App.2003) *review granted* (Minn. Aug. 5, 2003). We will not, therefore, repeat the facts in full here.

On August 21, 2000, while T.J.C. and M.J. were playing on a trampoline beside M.J.'s house, M.J. reached over and touched T.J.C.'s penis. T.J.C. adjusted himself and said something to M.J.; M.J. then reached over and touched T.J.C.'s penis a second time. M.J.'s mother, watching from a window in the house, witnessed the incident.

As a result of the August 21, 2000 incident, on February 15, 2002, the district court adjudicated T.J.C. delinquent for commission of second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(a) (2000). The district court based the adjudication on: testimony by M.J.'s mother, testimony by M.J.'s sister, testimony by M.J., a videotaped interview of M.J. discussing the incident, and statements made by T.J.C. to police.

On appeal to this court, we held that T.J.C.'s statements were obtained in violation of his *Miranda* right, and therefore, the district court should not have considered those statements in its delinquency adjudication. We concluded, however, that the error was harmless, and affirmed T.J.C.'s adjudication. On remand from the supreme court, we now determine that the introduction of T.J.C.'s statement at the adjudication proceedings was harmless error as that doctrine was articulated in *Juarez.*

## ISSUE

Was the district court's erroneous admission of appellant's statement harmless error?

## ANALYSIS

Harmless Error Standard

■■■ *State v. Juarez* articulates the harmless error standard in Minnesota. 572 N.W.2d 286 (Minn.1997). The *Juarez* decision stands for the proposition that "[a] determination that the district court erred in admitting [an appellant's] statement does not automatically result in a reversal of his conviction and the granting of a new trial." *Id.* at 291. Therefore, a "conviction may stand so long as the admission of the statement was harmless beyond a reasonable doubt." *Id.*

■■ The supreme court crystallized the harmless error standard in *Juarez* by describing the analysis as a "harmless error impact analysis." 572 N.W.2d at 291. *Juarez* directs the appellate court to consider the impact of the error at trial, and in conducting its analysis, "the overwhelming evidence of guilt is a factor, often a very important one, in determining whether, beyond a reasonable doubt, the error has no impact on the verdict." *Id. Juarez* holds that an appellate court need "not analyze whether a jury would have convicted the defendant without the error, rather [it] look[s] to whether the error reasonably could have impacted upon the jury's decision." *Id* at 292.

■■ In *Juarez,* the central question became: "What effect did the jury's hearing Juarez' statement . . . actually have on the guilty verdict rendered?" 572 N.W.2d at

292. In *T.J.C.*, the central question becomes: "What effect did T.J.C.'s statement, as heard by the district court, actually have on the delinquency adjudication?" In either case, "[i]f the verdict rendered is 'surely unattributable' to the error, then the error is harmless beyond a reasonable doubt and the conviction stands." *Id.*

To determine if the verdict is "surely unattributable" to error, this court must look to the whole record because "it is not sufficient to find that without the error enough evidence exists in support of the conviction, without a thorough examination of the evidence it would be impossible to discover whether the jury's verdict was 'surely unattributable' to the erroneous admission." 572 N.W.2d at 292.

*An Examination of the Record Reveals that the District Court's Admission of T.J.C.'s Statement was Harmless Error*

The district court convicted T.J.C. of criminal sexual conduct in the second degree, defined as:

A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if any of the following circumstances exists:

(a) the complainant is under 13 years of age and the actor is more than 36 months older than the complainant. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense. In a prosecution under this clause, the state is not required to prove that the sexual contact was coerced.

Minn.Stat. § 609.343–1(a) (2000).

"Sexual contact" is defined as:

... any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, and committed with sexual or aggressive intent:

. . .

(ii) the touching by the complainant of the actor's, the complainant's, or another's intimate parts effected by a person in a position of authority, or by coercion, or by inducement if the complainant is under 13 years of age ...

Minn.Stat. § 609.341 subd. 11(a)(ii) (2000).

On remand, we review only whether T.J.C.'s adjudication as delinquent was "surely unattributable" to the district court's erroneous admission of appellant's statement with regard to whether (1) M.J. was induced to touch appellant's intimate parts; and, (2) appellant had sexually aggressive intent in inducing M.J.

In determining whether T.J.C. had committed an act of "sexual contact," the district court relied on multiple items of evidence in concluding that T.J.C. engaged in sexual contact with M.J. The district court noted that "one of the most important points about this case is how it was all initiated ... by [M.J.'s mother] observing what had happened on the trampoline." The court relied on M.J.'s mother "testifying to what she saw, and her testimony was very clear." The court was "satisfied after evaluating [M.J.'s mother's] testimony ... that she was able to see you [T.J.C.] and [M.J.] and that her testimony that she saw [M.J.] touch you on the penis, that you adjusted yourself, that she saw you say something to [M.J.], couldn't hear you, but then saw [M.J.] touch your penis again, that testimony was credible."

The district court also relied on the testimony of M.J.'s mother that, after the incident on the trampoline, M.J.'s mother spoke with M.J. about what happened and that M.J. confided that T.J.C. had told M.J. to touch his penis.

In discussing M.J.'s videotaped interview, the district court conceded that some aspects of the videotape interview were troubling—specifically the lapse of time between when M.J. reported the incident and when she was ultimately interviewed, that M.J.'s family was not cautioned about discussing the incident with her, and that M.J.'s mother was present at the interview and gave M.J. cues to speak—but the district court found that the parts of the videotape that were troubling were unrelated to the charges appellant ultimately faced. More importantly, the district court stated that its ultimate opinion on the videotape was that "it [was] not as important in this case as it is in other cases where that is all you have is the child's word. Here we have statements from [M.J.'s mother] and other evidence."

The district court found the testimony of A.J., M.J.'s sister, persuasive corroborating testimony that T.J.C. had indeed told M.J. to touch his penis.

Finally, the district court found M.J.'s own testimony persuasive. The district court acknowledged that M.J. "probably said more in this case than the Court has seen in other cases before." The district court noted that M.J. was not prompted to testify, and that in her statement, made of her own volition, she indicated that she did touch T.J.C.

The district court noted that T.J.C.'s statement to the police was "also important," but the court indicated that the overwhelming weight of evidence proved that T.J.C. engaged in sexual contact with M.J. The district court based this conclusion in large part on the credibility and import of the testimony of M.J.'s mother, satisfaction with A.J.'s corroboration of the incident, and that M.J.'s own testimony both was credible, and of her own volition.

The issue of whether appellant had sexually aggressive intent is a closer question. But we conclude that the district court's findings of "sexual or aggressive intent" on the part of T.J.C. is "surely unattributable" to the court's erroneous admission of T.J.C.'s statements.

Whether T.J.C. acted with sexually aggressive intent can be established through repeated attempts to accomplish sexual contact. *See In re Welfare of C.S.K.*, 438 N.W.2d 375, 377 (Minn.App.1988). Here, the incident on the trampoline alone demonstrates T.J.C.'s repeated attempts to accomplish sexual contact, thereby demonstrating aggressive intent. *See C.S.K.*, 438 N.W.2d at 377. "Repeated attempts," in this context, consists of the two attempts M.J.'s mother witnessed on the trampoline when T.J.C induced M.J. to touch his penis. The record supports the conclusion that the district court believed the testimony of M.J.'s mother about this occasion of sexual contact between T.J.C. and M.J. In the district court's ruling, it noted that:

> [The troubling aspects of the Marxhausen video] have more to do with allegations surrounding what could have been Criminal Sexual Conduct in the First Degree with penetration, and obviously the State decided not to pursue that charge, but it is my ultimate opinion that on the videotape it is not as important in this case as it is in other cases where that is all you have is the child's word. *Here we have statements from [M.J.'s mother]* and other evidence that I will get to in a moment.

(emphasis added).

In light of the fact that the purpose of the harmless error review "is to relieve the courts and the public of the needless expense of retrying cases 'in which the result would be the same after the error had

been corrected,' " [1] and after review of the entire record, it is clear that the answer to the question "What effect did T.J.C.'s statement, as heard by the district court, actually have on the delinquency adjudication?" is: very little. The verdict rendered was "surely unattributable" to the error in admitting T.J.C.'s statement, that error is harmless, and T.J.C.'s delinquency adjudication stands.[2]

## DECISION

At appellant's delinquency adjudication, the district court erred when it admitted appellant's statements that were taken in violation of his *Miranda* right. That error was harmless, however, because after a review of the entire record, it is clear that appellant's adjudication was "surely unattributable" to the erroneous admission.

**Affirmed.**

1. *In re Welfare of R.J.E.*, 642 N.W.2d 708 (Minn.2002) (citing Philip J. Mause, *Harmless Constitutional Error: The Implications of Chapman v. California*, 53 Minn. L.Rev. 519, 519 (1969)).

2. Because we find that the verdict rendered by the district court is "surely unattributable" to the harmless error of admitting T.J.C.'s statement, we need not reach the issue raised in respondent's brief of whether a new rule of law regarding the harmless error standard in bench trials should be fashioned.